# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# HELENA DIVISION

| | |
|---|---|
| CHAD L. DEARDORFF,<br><br>Plaintiff,<br><br>vs.<br><br>MIKE MAHONEY, DR. COHUT, DR. PERANIAN, and DR. JANE DOE,<br><br>Defendants. | Cause No. CV 11-00032-H-DWM-RKS<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE TO DISMISS CASE |

Pending is Plaintiff Chad L. Deardorff's Amended Complaint C.D. 13 and "Motion for Insert of Information." C.D. 15. This action presents a federal question over which jurisdiction lies pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a), and 42 U.S.C. § 1983.

By way of background, this Court originally recommended Mr. Deardorff's Complaint be dismissed for failure to state a claim. In his objections to those recommendations, Mr. Deardorff raised some additional facts which had not been raised in the Complaint. C.D. 9. Mr. Deardorff was given an opportunity to file an amended complaint which he did on October 6, 2011. C.D. 13. After review of the facts alleged in Mr. Deardorff's Objections and the Amended Complaint, it is still recommended that this matter be dismissed for failure to state a claim.

## I. STATEMENT OF CASE

### A. PARTIES

Mr. Deardorff is a prisoner proceeding without counsel. His Amended Complaint filed on October 6, 2011 indicated he was incarcerated at the START Program in Anaconda, Montana. On October 25, 2011, Mr. Deardorff filed a Notice of Change of Address indicating he is currently incarcerated at Montana State Prison.

The named defendants are Mike Mahoney, Warden of Montana State Prison; Dr. Cohut, MSP Medical; Dr. Peranian, MSP Medical; and Dr. Jane Doe, MSP Medical Director. C.D. 13, pp. 2-3.

Mr. Deardorff's Motion for Insert of Information C.D. 15 seeks to substitute Dr. Rantz, Medical Director at the Montana State Prison in place of Dr. Jane Doe. That motion will be granted.

### B. ALLEGATIONS

Mr. Deardorff alleges he injured his neck in a fall on January 26, 2009 while working at Montana State Prison. He contends he fell backwards hitting his neck and head hard enough to be knocked unconscious. He was taken to the prison infirmary where he complained of neck and head pain. "Minor tests" were done, he was inspected by a nurse, and then returned to his housing unit after being

signed out of the infirmary by Dr. Cohut who did not examine him.

He contends Dr. Cohut knowingly disregarded his serious medical condition and as a result he now has a bulged disc at his C-6 vertebrae and severe nerve damage causing excruciating headaches and numbness to both arms.

From January 26, 2009 through June 10, 2009 Mr. Deardorff contends he was repeatedly lied to about the seriousness of his life threatening condition by Montana State Prison personnel. He alleges they continuously brushed him off and considered him a nuisance for repeatedly requesting medical help for the extreme pain he was suffering. He contends he submitted approximately 6-10 medical requests to the prison infirmary and all stated he had extreme pain and pressure to his head and neck area. C.D. 13, p. 6. He was also going through dizzy spells and black out periods and had severe breathing problems due to a swollen neck.

On February 16, 2009, he was transported to the Powell County Memorial Hospital in Deer Lodge, Montana for x-rays which revealed an injury to his C-6 vertebrae. Some CT-scans were done of his upper spine and head area revealing a fracture and he was placed in a neck stabilizer and returned to the prison.

Upon his return to the prison, Mr. Deardorff's neck stabilizer was removed for security inspection and he was returned to his housing unit. He was never

reissued the neck stabilizer and continued submitting medical requests until he was transported on June 10, 2009 to the WATCH Program in Warm Springs, Montana.

Once the stabilizer was removed, Mr. Deardorff contends he could not endure the pain. He alleges the pressure in his head and neck were so bad at times that he would pass out or black out. He contends Dr. Cohut approved the removal of his neck stabilizer knowing of his serious injury and the pain he was enduring. He contends Dr. Peranian never re-issued his neck stabilizer causing him severe pain and pressure in his neck and head. After filing his medical grievance, Dr. Rantz still denied him his neck stabilizer. As a result he contends he continues to suffer with severe nerve damage, numbness in his arms and constant headaches and neckaches.

When seeing Dr. Cohut after his visit to the hospital in February 2009, Dr. Cohut continued to tell him that nothing was wrong. Dr. Cohut tried different medications and then told him it was all in his head and referred him to the prison's psychologist. The psychologist found no mental issue and referred him back to medical.

He then started seeing Dr. Peranian and making medical requests and making emergency trips to the infirmary due to passing out and blackouts. He was

never admitted to the infirmary for more than three or four hours at a time and was always told that nothing was wrong.

Due to Defendants actions, Mr. Deardorff alleges he continues to suffer from severe nerve damage, numbness to both arms and severe head and neck pains on a daily basis. He contends Dr. Cohut, Dr. Peranian and Dr. Rantz all failed to provide adequate medical attention to his serious injury and Warden Mahoney, as the overseer of the entire prison, did not properly attend to his medical grievance appeal.

On or about June 6, 2009, Mr. Deardorff was taken back to Powell County Hospital for an MRI on his neck. Before the results were back, Mr. Deardorff was transferred to the WATCH Program in Warm Springs, Montana. Once Mr. Deardorff was at Missoula Prerelease he started seeing a doctor at Partnership Health Center. The doctor obtained the MRI results and told Mr. Deardorff he had a bulged disc in his C-6 as a result of his previous injury.

## II. SCREENING PER 28 U.S.C. §§ 1915(e)(2), 1915A

As Mr. Deardorff is a prisoner proceeding in forma pauperis, this Court must review his claims under 28 U.S.C. § 1915 and 28 U.S.C. § 1915A to determine if the allegations are frivolous, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from

such relief.

To state an Eighth Amendment claim for failure to provide medical care, a prisoner must allege that a defendant's "acts or omissions [were] sufficiently harmful to evidence a deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). A plaintiff may demonstrate deliberate indifference by "showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) citing McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1991).

It will be presumed for purposes of this Order that Mr. Deardorff suffered from a serious medical need. In the Court's prior Findings and Recommendations it was found that the medical staff at the prison were attempting to address Mr. Deardorff's medical needs and therefore were not deliberately indifferent.

Mr. Deardorff injured his neck on January 26, 2009. He was immediately seen by the infirmary and was seen several additional times in the next three weeks at the infirmary. On February 16, 2009, Mr. Deardorff was taken to the hospital where x-rays and CT scans were taken of his neck. He then learned he had a fracture to his C-6 vertebrae.

When he returned from the hospital on February 16, 2009, Mr. Deardorff's neck stabilizer was taken by prison officials. In his objections to the Court's Recommendations he alleges that because he was never re-issued his neck stabilizer it caused him to suffer a bulged disc and severe nerve damage. He also alleges the removal caused a lot of serious pain and discomfort. But he alleges in his Amended Complaint that the removal of the neck stabilizer was done with the approval of Dr. Cohut and Dr. Peranian.

A difference of opinion between doctors does not give rise to liability on a § 1983 claim. Toguchi v. Chung, 391 F.3d 1051, 1059-60 (9th Cir. 2004) ("Dr. Tackett's contrary view was a difference of medical opinion, which cannot support a claim of deliberate indifference."); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) (difference of opinion between medical personnel regarding the need for surgery does not amount to deliberate indifference to a prisoner's serious medical needs). As such, Mr. Deardorff's allegations are insufficient to allege an Eighth Amendment claim.

Secondly, Mr. Deardorff alleged in his objections that Drs. Cohut and Peranian ignored the x-ray report that indicated he had a fracture and were instead prescribing him medication for "psychological" reasons even though the psychologist deemed it a medical problem and not a mental health problem. Again

a difference in opinion regarding the medications given is insufficient to establish deliberate indifference. Even if the Doctors were wrong in their diagnosis, medical malpractice in and of itself is insufficient to state an Eighth Amendment claim. Estelle, 429 U.S. at 106. Moreover, a difference of opinion between medical professionals and the prisoner concerning the appropriate course of treatment does not amount to malpractice, much less deliberate indifference. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

What remains clear in the original Complaint, the objections to the Court's recommendations, and the Amended Complaint is that the medical staff defendants were attending to Mr. Deardorff's medical needs. What these documents allege is that Mr. Deardorff was taken to outside medical personnel on two separate occasions for additional testing, he was referred to a mental health specialist, he was prescribed at least some medications (even though it is disputed whether or not they were the most appropriate medications), and he was seen on repeated occasions by medical staff. The level of treatment by Defendants, even if Mr. Deardorff is correct in his allegation that it was negligent treatment, does not demonstrate deliberate indifference. Accordingly, the Court will again recommend this matter be dismissed for failure to state a claim.

## III. CONCLUSION

### A. Leave to Amend

Mr. Deardorff has failed to state a claim upon which relief may be granted as set forth above. The defects discussed above cannot be cured by the allegation of additional facts and will be recommended for dismissal.

### B. "Strike" under 28 U.S.C. § 1915(g)

The Prison Litigation Reform Act prohibits prisoners from bringing forma pauperis civil actions if the prisoner has brought three or more actions in federal court that were dismissed for frivolousness, maliciousness, or for failure to state a claim. 28 U.S.C. § 1915(g). This dismissal constitutes a strike because Mr. Deardorff failed to state a claim upon which relief may be granted.

### C. Certification Regarding Appeal

The Federal Rules of Appellate Procedure provide as follows:

[A] party who was permitted to proceed in forma pauperis in the district-court action, or who was determined to be financially unable to obtain an adequate defense in a criminal case, may proceed on appeal in forma pauperis without further authorization, unless:
> (A) the district court-before or after the notice of appeal is filed-certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis and states in writing its reasons for the certification or finding;

Fed. R.App. P. 24(a)(3)(A).

Analogously, 28 U.S.C. § 1915(a)(3) provides "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." The good faith standard is an objective one. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A plaintiff satisfies the "good faith" requirement if he or she seeks review of any issue that is "not frivolous." Gardner v. Pogue, 558 F.2d 548, 551 (9th Cir. 1977) (quoting Coppedge, 369 U.S. at 445). For purposes of section 1915, an appeal is frivolous if it lacks any arguable basis in law or fact. Neitzke v. Williams, 490 U.S. 319, 325, 327 (1989); Franklin v. Murphy, 745 F.2d 1221, 1225 (9th Cir. 1984).

The finding that Mr. Deardorff's Complaint fails to state a claim upon which relief may be granted is so clear no reasonable person could suppose an appeal would have merit. Therefore, the Court should certify that any appeal of this matter would not be taken in good faith.

It is **ORDERED:**

Mr. Deardorff's Motion for Insert of Information C.D. 15 is GRANTED. Dr. Rantz will be substituted in place of Dr. Jane Doe.

It is **RECOMMENDED:**

1. This matter should be dismissed with prejudice for failure to state a claim upon which relief may be granted. The Clerk of Court should be directed to close

this matter and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

2. The Clerk of Court should be directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g) based upon Mr. Deardorff's failure to state a claim.

3. The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith. Mr. Deardorff's failure to state a claim is so clear no reasonable person could suppose an appeal would have merit. The record makes plain the instant Complaint is frivolous as it lacks arguable substance in law or fact.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), Mr. Deardorff may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. As this deadline allows a party to act after the Findings and Recommendations is served, it falls under Fed.R.Civ.P. 6(d). Therefore, three (3) days are added after the period would otherwise expire. Any such filing should be captioned "Objections to

Magistrate Judge's Findings and Recommendations."

A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 30th day of November, 2011.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge